| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Ira R. Deiches, Esq.<br>Deiches & Ferschmann<br>A Professional Corporation<br>25 Wilkins Avenue<br>Haddonfield, NJ 08033<br>(856)428-9696<br>Proposed Attorneys for Debtor<br>and Debtor-in-Possession<br><br>In the Matter of:<br><br>JAMES CANDY COMPANY,<br><br>Debtor and Debtor-in-Possession. | Case No. 18-32139<br><br>Chapter 11<br><br>Judge: Hon. Andrew B. Altenburg, Jr.<br><br>Hearing Date: December 11, 2018 |

**APPLICATION IN SUPPORT OF DEBTOR'S MOTION PURSUANT TO SECTION 105, 361, 362, 363 AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR ENTRY OF AN ORDER (I) APPROVING AGREEMENT AUTHORIZING DEBTOR AND DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING FINAL HEARING ON USE OF CASH COLLATERAL AND APPROVING FORM AND MANNER OF NOTICE OF FINAL HEARING**

TO: **THE HONORABLE** ANDREW B. ALTENBURG JR., **BANKRUPTCY JUDGE**

James Candy Company, Debtor and Debtor-in-Possession herein ("Debtor"), by and through its undersigned proposed attorneys, Deiches & Ferschmann, A Professional Corporation, submits this Application in support of its motion (the "Motion") for an Order pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United State Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving Debtor's agreement authorizing the Debtor to use Cash Collateral (as defined below) of OceanFirst Bank, N.A. f/k/a OceanFirst Bank, as successor to Cape Bank (OceanFirst Bank and Cape Bank hereinafter referred to interchangeably as the "Bank" as the context may require), on an interim and final basis, (ii) authorizing adequate protection in the form of replacement liens to the Bank to the extent that the use by the Debtor of its Collateral (including Cash Collateral) results in a decrease

in the value of the Bank's liens in that Collateral, and (iii) scheduling and approving the form and manner of notice of the final hearing on the Motion (the "Final Hearing") to consider the relief requested herein. In support of the Motion, Debtor relies on the Certification of Frank Glaser, Debtor's President (the "Glaser Certification"), and respectfully represents that:

### Preliminary Statement

1. The events leading to the filing of Debtor's Petition for Relief are more fully set forth in the Glaser Certification.

2. The Motion contemplates a two-step procedure whereby this Court would, at the conclusion of an interim hearing (the "Interim Hearing"), enter an order, substantially in the form of the order attached hereto as Exhibit A (the "Interim Order"), approving Debtor's agreement for the use of the Cash Collateral on an emergency basis and authorizing and granting adequate protection as necessary, pending the Final Hearing, and at the conclusion of the Final Hearing, enter an order (the "Final Order") granting Debtor authority to use the Cash Collateral and to authorize and grant adequate protection as necessary. Because of the exigent circumstances of Debtor's finances and the nature of the relief requested, Debtor requests that the Interim Hearing on the Motion take place as soon as possible after the filing of Debtor's Chapter 11 Petition. Prompt entry of the Interim Order is essential to avoid immediate and irreparable harm to Debtor's estate pending the Final Hearing. As described more fully below and in the Glaser Certification, Debtor needs to use the Cash Collateral to maintain its business operations and protect its ability to reorganize in accordance with Chapter 11 of the Bankruptcy Code. Debtor intends to provide adequate protection to the Bank, by providing replacement and additional liens on all Debtor's assets and making periodic payments under and in accordance with the parties' pre-Petition loan documents as modified and effective as of December, 2017.

### Introduction

3. On November 7, 2018 (the "Petition Date"), Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. Debtor continues in the possession of its property and in the management and operation of its business as Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee, examiner or statutory committee has been appointed in this Chapter 11 case.

2

## Jurisdiction and Venue

5. This Court has jurisdiction of the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion raises a core matter under 28 U.S.C. § 157(b)(2)(A), (D) and (M). Venue of this case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief sought herein may be granted under sections 105(a), 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

## Background

6. The events leading to the filing of Debtor's Petition for Relief are more fully set forth in the Glaser Certification.

## Pre-Petition Indebtedness

7. On or about March 19, 2009, Debtor entered into two (2) loans with the Bank, in the amounts of $5,364,000.00 and $750,000.00, respectively ("Loan #1 and Loan #2," and, collectively, the "Loans").

8. To secure its obligations to the Bank under the Loans, Debtor entered into a security agreement dated March 19, 2009, granting the lender a security interest in all of Debtor's assets including, but not limited to, Debtor's inventory, equipment, accounts, and the proceeds of the foregoing (the "Collateral").

9. The notes associated with the Loans, together with all agreements, documents and instruments executed in connection therewith or in furtherance thereof, are hereinafter collectively referred to as the "Loan Documents.") Copies of the Loan Documents have been filed with the Court as an Exhibit "A" to the Glaser Certification. The Loan Documents have not been attached to the copies of this pleading served by mail to creditors and parties-in-interest for brevity, but can be provided to those creditors and parties-in-interest upon request.

10. Pursuant to the Loan Documents, the Bank holds perfected, valid, enforceable and non-avoidable first-priority liens on and security interests in (the "Pre-Petition Liens") substantially all of the Debtor's now existing or hereinafter arising properties and assets, including, without limitation (1) inventory; (2) accounts; (3) equipment; and (4) fixtures (the "Collateral").

11. As of the Petition Date, Debtor was obligated to the Bank under the Loans in the approximate principal sums of $2,147,110.47 and $739,001.70, respectively.

## Urgent Need to Use Cash Collateral and Provisions for Adequate Protection

12. By the Motion, Debtor seeks approval of its agreement with the Bank for the use of the Cash Collateral (defined hereinafter). In return for the use of the Cash Collateral (defined hereinafter), the Debtor proposes to provide adequate protection to the Bank with additional and replacement liens and periodic payments, as more fully set forth in the proposed order. Permitting Debtor to use the Cash Collateral (defined hereinafter) represents the best opportunity for Debtor to keep its business viable, maintain its going-concern value, and maximize the likelihood of a successful reorganization. As set forth in the Glaser Certification, Debtor has insufficient cash to meet ongoing obligations necessary to operate its business. Specifically, without additional financing or the use of Cash Collateral (defined hereinafter), Debtor cannot pay the wages, salaries, utilities, and other expenses associated with operating its business.

13. The Cash Collateral of the Bank consists of "Cash Collateral" as such term is defined under section 363 of the Bankruptcy Code. The Bank has valid, perfected Pre-Petition Liens on the Collateral.

14. In an effort to adequately protect the Bank for Debtor's use of the Cash Collateral, as requested in the Motion, Debtor is offering the Bank additional and replacement liens on all of the assets of Debtor to the extent that use by Debtor of its Pre-Petition collateral (including Cash Collateral) results in a decrease in the value of the Bank's liens in that Pre-Petition collateral, in the form of first priority liens on, and valid security interests in, the same type of property of Debtor presently secured by valid and perfected Pre-Petition liens and security interests of the Bank.

15. Debtor prepared an operating budget through the end of December, 2019 (the "Budget," a copy of which is attached to the Interim Order) which indicates that through the use of proceeds of existing cash and accounts and forecasted sales, Debtor can fund further operations until it is able to confirm a Chapter 11 plan of reorganization. Debtor avers that the continued operation of its business through use of the Cash Collateral will preserve its going concern value, enable Debtor to capitalize on that value through a reorganization, and ultimately enable Debtor to confirm a Chapter 11 plan. Conversely, if Debtor is not authorized to use Cash Collateral, its business will likely shut down, and Debtor will deteriorate in value.

16. As is demonstrated in the Budget, Debtor forecasts revenues in the approximate amount of $5,580,849.00. For the same time period, Debtor forecasts operating disbursements in the approximate amount of $5,257,818.00.

4

17. The amount of Cash Collateral authorized to be used pending a final hearing or entry of a final order will not exceed more than five percent (5%) of each line item set forth in the Budget, for the time period from the Petition Date through the Final Hearing.

18. Debtor may expend amounts up to a variance of five percent (5%) as to any line item of the budget attached to the Interim Order, provided the aggregate expenditures do not exceed one hundred five percent (105%) of the aggregate of the Budget expenditures for any calendar month.

19. Pursuant to the terms of the Interim Order, the occurrence of any of the following events shall constitute an Event of Default: (a) the failure by Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants or obligations under the Interim Order; (b) Debtor's obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest or other lien on all or any portion of the Collateral which is equal or senior to any security interest or other lien of the Bank, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Bank; (c) any lien or security interest purported to be created under the Loan Documents shall cease to be, or shall be asserted by Debtor not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Loan Documents or under the terms of the Interim Order; (d) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral having a value in excess of $15,000.00; or (ii) with respect to any lien on or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of Debtor; (e) reversal, vacatur, or modification (other than a modification with the express prior written consent of the Bank) of the Interim Order; (f) dismissal of the Chapter 11 case or conversion of the Chapter 11 case to a Chapter 7 case, or appointment in the Chapter 11 case of a Chapter 11 trustee or examiner with enlarged powers or other responsible person; (g) any misrepresentation of a material fact made after the Petition Date by Debtor or its agents to the Bank about the financial condition of Debtor, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral; (h) a material default by Debtor in reporting financial information as and when required under the Interim Order; (i) the sale of any material portion of Debtor's assets outside the ordinary course of business without the prior written consent of the Bank, in its sole discretion.

20. Debtor has a critical and urgent need to use the Cash Collateral in its daily business. Absent the use of the Cash Collateral, Debtor will be seriously and irreparably harmed, resulting in significant losses to Debtor's estate and its creditors.

21. Debtor's assets consist primarily of real property at 1519 Boardwalk, Atlantic City, New Jersey, cash, the machinery and equipment used by Debtor in the operation of its candy business, inventory, and accounts.

22. As of the Petition Date, Debtor had cash and bank deposits approximating $16,048.44, inventory approximating $227,734.52, and accounts receivable approximating $30,438.00.

## Relief Requested

23. Debtor requests, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 4001(d), entry of an order (1) approving Debtor's agreement for the use of the Cash Collateral of the Bank on an interim basis, (2) authorizing adequate protection in the form of (a) post-Petition replacement liens to the Bank to the extent that the use by Debtor of the Bank's Collateral (including Cash Collateral) results in a decrease in the value of the Bank's liens in such Collateral and periodic payments as scheduled in the parties' loan documents and (b) allowed superpriority expense claims in the amount of the Adequate Protection Obligations (as defined in the Interim Order), and (3) scheduling and approving the form and manner of notice of the Final Hearing to consider the relief requested in this Motion.

24. Debtor's use of Cash Collateral is appropriate and should be authorized under section 363(c)(2) of the Bankruptcy Code, which provides that debtors may use, sell or lease cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). In order to use cash collateral in accordance with section 363(c)(2)(B) of the Bankruptcy Code in situations where the collateral holders do not consent, the debtors are required to provide each party that holds an interest in the cash collateral, to the extent applicable, with "adequate protection" for such use as contemplated by section 361 of the Bankruptcy Code. *See* 11 U.S.C. § 363(e).

25. Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that

6

has an interest in cash collateral sought to be used by a debtor, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest. *Id.*

26. Courts determine the means for providing adequate protection on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Realty SW. Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *see also MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397 (10th Cir. 1987); *In re Martin v. United States (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). Adequate protection is provided to protect a secured creditor from any diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996).

27. Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *See In re Mosello*, 195 B.R. at 288 ("[t]he purpose of 'adequate protection' for a creditor 'is to insure that the creditor receives the value for which he bargained prebankruptcy'") (citing *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994). Courts have noted that "[t]he essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing ... and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982); *In re O.P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988).

28. The Bankruptcy Code expressly provides "adequate protection may be provided by ... an additional or replacement lien." 11 U.S.C. § 361(2). Granting replacement liens provides adequate protection of the secured creditors' interest in cash collateral. *See, e.g., In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). Debtor will adequately protect the Bank's interests in Cash Collateral by, among other things, providing the replacement liens on the Collateral of the same type as the Bank held pre-Petition to the extent the Company's use of Cash Collateral results in a post-Petition decrease in the value securing the Bank's claims and continuing payments as scheduled by the parties' Pre-Petition loan documents.

29. In addition to the replacement liens, the Interim Order grants the Bank an allowed administrative expense claim having the priority specified in Section 507(b) of the Bankruptcy Code. This claim provides the Bank additional protection.

30. The continued operation of Debtor's business through use of the Cash Collateral will preserve its going concern value, enable Debtor to capitalize on that value through a reorganization, and ultimately enable Debtor to confirm a Chapter 11 plan. Conversely, if Debtor is not authorized to use Cash Collateral, its business will likely shut down, and Debtor will deteriorate in value.

31. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern. A debtor attempting to reorganize a business under Chapter 11 has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated. *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also Northwest Airlines Corp. v. Ass'n of Flight Attendants- CWA (In re Northwest Airlines Corp.)*, 349 B.R. 338, 380 (S.D.N.Y. 2006) ("[t]he Bankruptcy Code embodies a strong policy in favor of reorganization").

32. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *Stein v. United States Farmers Home Administration (In re Stein)*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations, and that the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]." *Id.* at 460; *see also In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.)*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) ("[t]he protection and maintenance of the plaintiff-mortgagee's collateral ... clearly ensures that the plaintiff-mortgagee's investment is adequately protected"); *Federal Nat'l. Mortgage Ass'n v. Dacon Bolingbrook Assocs., Ltd. P'ship.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Dynaco Corp.*, 162 B.R. 389, 395–96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash

8

collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *Karl A. Neise, Inc.*, 16 B.R. at 602 (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor; debtors can use cash collateral "in the normal operation of their business").

33. Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Bank. The combination of (a) Debtor's ability to preserve the going concern value of the business with the use of Cash Collateral, (b) the replacement liens, (c) providing the Bank with the other protections set forth herein and in the Interim Order, and (d) granting administrative priority under Section 507(b) of the Bankruptcy Code, adequately protects the Bank's secured position under section 361(2) and (3). Prior to the Petition Date, Debtor requested and obtained the Bank's consent to the use of the Bank's cash collateral. For all of the reasons stated above, approval of the Interim Order is proper here.

34. At the final hearing on the Motion, Debtor will ask the Court to enter a final order (the "Final Order").

## Interim Approval Of the Use of Cash Collateral Should be Granted

35. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of a motion requesting such use. Accordingly, Debtor is first requesting entry of an Interim Order providing for interim use of Cash Collateral pending a final hearing (the "Final Hearing") on the Motion.

36. The Bank has consented to the Interim Order submitted herewith. The Court may enter the order under Section 363(c)(2) since "each entity that has an interest in such collateral consents." Moreover, with respect to interim authorization to use Cash Collateral, Debtor's need to use such Cash Collateral is immediate and compelling. Without such authorization, Debtor may not be able to continue its operations on a normal basis, and thus will suffer severe immediate and irreparable harm. If Debtor shuts down or significantly curtails its business, the effect on its potential viability may be disastrous.

37. Debtor has determined that the terms and conditions of the Interim Order are fair and reasonable under the circumstances and reflect Debtor's exercise of reasonable business judgment

consistent with Debtor's fiduciary duties as Debtor-in-Possession. Without the relief granted in the Interim Order, Debtor may be forced to suspend or curtail its normal operations.

38. Because the use of Cash Collateral by Debtor is necessary to prevent the irreparable harm that would befall Debtor, its estate, its creditors, and its employees if Debtor's business had to cease operations, and in consideration of the Bank's consent, the Court should authorize Debtor's use of Cash Collateral and enter the Interim Order in the form attached hereto as Exhibit A, and the Final Order as submitted prior to the Final Hearing. Similar relief has been granted in other Chapter 11 cases.

## Notice

39. Notice of the Motion has been given electronically, by telephone, hand or overnight delivery, or facsimile to (i) the Office of the United States Trustee; (ii) counsel for the Bank; (iii) Debtor's other secured creditor(s); (iv) Debtor's twenty (20) largest unsecured creditors; and (v) all parties that have appeared in this case. The cost of mailing notice to all creditors and parties-in-interest in this Chapter 11 case would be extremely expensive, and would not, in Debtor's view, confer any substantial benefit on Debtor, its estate or its creditors. Accordingly, and in light of the urgency of the relief requested, Debtor respectfully requests that no further notice of the Final Hearing and of the relief requested, other than as provided in this Motion, be dispensed with and waived. Because of the nature of the relief requested, Debtor submits that such notice is sufficient and that no further notice of the relief requested in the Motion need be given to any party.

## Notice With Respect to Final Hearing

40. No trustee, examiner or statutory committee has been appointed in connection with this Chapter 11 case. Pursuant to Bankruptcy Rule 4001, Debtor respectfully requests that it be authorized to provide notice of the Final Hearing by serving a copy of the Motion together with the Interim Order, electronically, or by hand delivery or overnight mail, upon (i) the Office of the United States Trustee; (ii) counsel for the Bank; (iii) Debtor's other secured creditor(s); (iv) Debtor's twenty (20) largest unsecured creditors; and (v) all parties that have appeared in this case. The cost of mailing notice to all creditors and parties-in-interest in this Chapter 11 case would be extremely expensive, and would not, in Debtor's view, confer any substantial benefit on Debtor, its estate or its creditors. Accordingly, and in light of the urgency of the relief requested, Debtor

respectfully requests that no further notice of the Final Hearing and of the relief requested, other than as provided in this Motion, be dispensed with and waived.

### No Prior Request

41. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, Debtor respectfully requests entry of an Interim Order, substantially in the form attached to this Application, and granting such other and further relief as this Court deems just and proper.

DEICHES & FERSCHMANN
A Professional Corporation
Proposed Attorneys for
James Candy Company

Dated: November 7, 2018         By: _____
                                    Ira R. Deiches, Esquire